**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
(WACO DIVISON)**

| | |
|---|---|
| **AERITAS, LLC,** | |
| **Plaintiff,** | Case No. 6:20-cv-00102-ADA |
| **v.** | **PATENT CASE** |
| **SUBWAY SANDWICH SHOPS INC., SUBWAY SUBS, INC., FRANCHISE WORLD HEADQUARTERS, LLC d/b/a SUBWAY RESTAURANTS d/b/a SUBWAY, and DOCTOR'S ASSOCIATES, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## <u>TABLE OF CONTENTS</u>

*Page*

I.    STATEMENT OF THE FACTS ...................................................................... 2

II.   ARGUMENT ................................................................................................ 4

     A.    Legal Standard .................................................................................. 4

          1.    This case should be disposed of at the pleading stage through Rule 12(b)(6). 4

          2.    The law of 35 U.S.C. § 101 .......................................................... 5

     B.    The Asserted Patents are Invalid under 35 U.S.C. § 101 .................................... 6

          1.    The independent claims of the asserted patents are patent-ineligible. ........... 6

          2.    The dependent claims are not patent eligible. ............................................. 15

     C.    There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage............................................................. 17

III.  CONCLUSION................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ..................................................................................... *passim*

*Alice, Parker v. Flook*,
   437 U.S. 584 (1978) ................................................................................................. 12

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ................................................................................ 9

*Ancora Technologies, Inc. v. HTC America, Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018) .............................................................................. 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) .............................................................................. 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................. 4

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .............................................................................. 17

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ............................................................................................. 5, 7

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ....................................................................... 2, 7, 16

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ......................................................................... 12, 14

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   927 F.3d 1306 (Fed. Cir. 2019) ......................................................................... 17, 18

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019) .............................................................................. 10

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   21 F. Supp. 3d 758 (E.D. Tex. 2014) ..................................................................... 16

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)..............................................................................7, 14

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)....................................................................................11

*Cuvillier v. Sullivan*,
503 F.3d 397 (5th Cir. 2007) ........................................................................................4

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)......................................................................................11

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980).......................................................................................................5

*DietGoal Innovations LLC v. Bravo Media LLC*,
33 F.Supp.3d 271 (S.D.N.Y.2014) ..............................................................................10

*Elec. Power Grp, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)..................................................................1, 11, 12, 15

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).....................................................................................7

*Epic IP LLC v. Backblaze, Inc.*,
351 F. Supp. 3d 733 (D. Del. 2018)...............................................................................2

*Finjan, Inc. v. Blue Coat System, Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).....................................................................................7

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016).....................................................................................5

*Gottschalk v. Benson*,
409 U.S. 63 (1972).........................................................................................................5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)........................................................................1, 9, 10, 13

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016)....................................................................................13

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
107 F. Supp. 3d 677 (E.D. Tex. 2015) (Bryson, J.), aff'd, 639 F. App'x 637 (Fed. Cir. 2016)9, 10

*Lovelace v. Software Spectrum*,
78 F.3d 1015 (5th Cir. 1996) .........................................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ...............................................................................................6

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...............................................................................8

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ..............................7

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ..........................................................................8, 11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ..........................................................................7, 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ..........................................................................7, 11

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) ...................................................5

**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

**Other Authorities**

Decisions, *Inc* ........................................................................................................6

Federal Rules of Civil Procedure Rule 12(b)(6) ...................................................2, 4, 6

Rule 12 .................................................................................................................17

U.S. Patent Nos. 8,055,285 ................................................................................ *passim*

Providing information based on a consumer's interests and location is an abstract concept ineligible for patent protection. The claims of the asserted patents[1] in this action against Subway are directed to this abstract concept and do not claim any inventive concept sufficient to confer patent eligibility on the claimed abstract idea. The Federal Circuit has addressed patents directed to similar concepts and found their claims to be directed to patent-ineligible subject matter. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) ("This sort of information tailoring is a 'fundamental. . . practice long prevalent in our system . . . .'"; "An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another 'fundamental . . . practice long prevalent in our system . . . .'"); *Elec. Power Grp, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (finding ineligible claims directed to collecting information, analyzing it, and displaying certain results of the collection and analysis).

Using existing technologies to collect data and provide tailored information to users is not a technological improvement or an inventive way of applying conventional technology; it was not even new as of July 13, 2000. Moreover, none of the claims recites any specific hardware or software; instead, the specification discloses only that the alleged invention uses generic computer components and software to perform conventional activities. Abstract ideas like this, when implemented using conventional computer components, are not eligible for patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014). This is especially true if, as is the case here, the abstract idea is not directed to any improvement in technology and any purported "inventive concept" is limited to improving the abstract idea

---

[1] Aeritas asserts U.S. Patent Nos. 8,055,285; 9,390,435; 9,888,107; and 10,362,160. The asserted patents share a common specification. Unless stated otherwise, all specification citations in this motion are to the '285 Patent.

itself. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

The applicants did not claim an unconventional system, nor did they claim a particular mechanism for improving computing systems. As Judge Bryson, sitting by designation in the District of Delaware, has noted, claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). The asserted patents simply claim the abstract concept of providing information based on a consumer's interests and location, not a specific implementation of that concept. Their claims are therefore invalid for failure to claim patent-eligible subject matter.

Resolving these issues does not require more discovery or claim construction. Aeritas' factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources further litigating invalid patents, Subway requests the Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I.      STATEMENT OF THE FACTS

The asserted patents' purported invention is directed to notifying the user of purchasing opportunities on their mobile devices. *See, e.g.,* '285 Pat., 2:10-21. The patents describe the advantage of the purported invention as allowing "merchants, suppliers and vendors [to] more effectively market distressed, time sensitive, location sensitive or general inventories of goods or services." *Id.*, 2:30-31. The applicants pointed out that "unlike computers which usually have fairly large display screens, mobile phones and other relatively small wireless devices do not provide access to the Internet that is as convenient as that provided by traditional computers." *Id.*, at 1:22-27.  To overcome these limitations, the applicants wanted to "leverage the voice functionality available on many wireless devices, and the data capability associated with those

same devices." *Id.*, at 1:57-59.

The claims, however, do not actually require any of these capabilities, nor do they improve these capabilities. For example, Claim 1 of the '285 Patent recites the steps to accomplish the goal of the purported invention: (1) "receiving and storing an input in a user profile in a database, the input comprising consumer interest data;" (2) "obtaining data identifying a current location of the mobile communication device;" (3) "based on the input stored in the user profile and the current location of the mobile communication device, initiating a search to locate information pertinent to the input;" (4) "receiving results derived from the search;" (5) "and in response to the input and the search, delivering, by a notification server, information to the mobile communications device."

But this purportedly improved technique consists of nothing more than the use of conventional components and processes. The applicant made this clear through their own language in the specification. For example, the specification makes the following statements about the use of conventional components and processes, among others:

- "User devices [] preferably include mobile phones or other user devices capable of both voice and data communications." *Id.*, 6:7-9.

- "[T]he user may provide non-verbal input, such as depressing a 'yes/no' button or a designated sequence of keys, instead of providing spoken input." *Id.*, 9:12-15.

- "[The database] preferably includes user profiles database [] and inventory database []. Additional and/or different databases may be employed consistent with the objects of the present invention." *Id.*, 7:34-38.

- "[V]arious locating mechanisms, including the use of global positioning satellite coordinates, user supplied coordinates, and location information available from cellular

and PCS telephone systems, can be used without departing from the spirit and scope of the present invention." *Id.*, 8:12-16.

- "[N]otifications can be delivered to user devices [] through speech services [] or directly from notification server [] using various non-voice protocols . . . ." *Id.*, 5:61-65.

That is, the invention requires only a generic server and a generic mobile phone to be used for their conventional purposes.

## II.   ARGUMENT

### A.  Legal Standard

#### 1.  This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal citations

and quotations omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu,* LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.") (brackets in original, internal citations and quotations omitted).

### 2.  The law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611-12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

5

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail* Decisions*, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01. Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300.

### B.    The Asserted Patents are Invalid under 35 U.S.C. § 101.

Aeritas' claims should be dismissed. The claims of the asserted patents are invalid under 35 U.S.C. § 101 because they fail both steps of the *Alice* test. Each of the claims is directed to the abstract idea of providing information based on a consumer's interests and location. Abstract ideas are not eligible for patenting. None of the claims contains an "'inventive concept' . . . sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Aeritas has failed to state a claim upon which relief may be granted, Subway respectfully requests that the Court grant its motion and dismiss Aeritas' claims with prejudice. FED. R. CIV. P. 12(b)(6).

### 1.    The independent claims of the asserted patents are patent-ineligible.

In determining patent eligibility under § 101, the Court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Under any plausible reading, the claims of the patent are directed to an unpatentable, abstract idea because they claim nothing more than the "longstanding," "routine," and "conventional" concept of providing information

based on a consumer's interests and location. *See Alice*, 134 S. Ct. at 2356–59; *Bilski*, 561 U.S. at 611.

      a)   **Alice Step One: The independent claims are directed to the abstract idea of providing information based on a consumer's interests and location.**

Claim 1 of the '285 Patent is representative of the independent claims.[2] *See, e.g.*, *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8–9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea."). The abstract idea inquiry begins by analyzing the "focus" of the claim, *i.e.*, its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). For example, the Federal Circuit has explained that courts should examine the patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). "In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)); *see BSG Tech*, 899 F.3d at 1285-86.

Accordingly, at step one, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd.*

---

[2] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

*v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *McRO, Inc. v. Bandai Namco Games Am., Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016) ("We therefore look to whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoked generic processes and machinery."). The question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

The "claimed advance" of Claim 1 of the '285 Patent is simply the idea of providing information based on a consumer's interests and location by collecting and displaying data:

| Claim Language | Claimed Idea |
|---|---|
| 1. A method, comprising: | |
| at a first time, receiving and storing an input in a user profile in a database, the input comprising consumer interest data; | receiving and storing data |
| at a second time distinct from the first time, obtaining data identifying a current location of the mobile communication device; | finding the location of the mobile device |
| based on the input stored in the user profile and the current location of the mobile communication device, initiating a search to locate information pertinent to the input; | searching for data |
| receiving results derived from the search; and | receiving data |
| in response to the input and the search, delivering, by a notification server, information to the mobile communications device. | sending data to the mobile device |

As shown above, the claim quickly reduces to the bare idea of receiving and storing consumer information, finding the location of the consumer's mobile device, searching for related information, and providing that information to the consumer. That is an abstract idea ineligible for patenting.

The Federal Circuit has held that instead of a specific definition of an abstract idea, "the decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016). Comparing Claim 1 of the '285 Patent to other claims held ineligible by the Federal Circuit indicates their ineligibility. Receiving and storing consumer information, finding the location of the consumer's mobile device, searching for related information, and providing that information to the consumer are not meaningfully distinct from similar claims that have been found to be directed to abstract ideas. *Cf. Capital One Bank (USA)*, 792 F.3d at 1369-70 (Fed. Cir. 2015) ("This sort of information tailoring is a 'fundamental. . . practice long prevalent in our system . . . .'"; "An advertisement taking into account the time of day and tailoring the information presented to the user based on that information is another 'fundamental . . . practice long prevalent in our system . . . .'").

Additionally, the claims in *Electric Power Group* recited a method for detecting events on an interconnected electric power grid by collecting information from various sources, analyzing this information to detect events in real time, and displaying the event analysis results and diagnoses. 830 F.3d at 1351–52. The Federal Circuit concluded that the focus of the claims at issue was the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Id.* at 1353. Claim 1 of the '285 Patent involves the same general steps of collecting and displaying information but without even including the additional step of performing an analysis on the collected information. Similarly, in *Kroy IP Holdings*, the claims recited a method and system for "incentive program participation and automated award fulfillment" that were "in communication with an inventory management system" and meant to

"provide a sponsor-selected geographic location for fulfillment." *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 678 (E.D. Tex. 2015) (Bryson, J.) , aff'd, 639 F. App'x 637 (Fed. Cir. 2016). Finding the claims to be directed to an abstract idea, the court concluded, "It is clear that each of the functions that the [] patent assigns to computers could be performed by a human being without the aid of a computer of any kind." *Id.* at 692. Claim 1 of the '285 Patent similarly collects and stores data about users (i.e., user interests and location) and performs information searches related to this data.

Furthermore, storing data in a database and providing information based on searching the database were well understood, routine, and conventional functions at the time of the alleged invention. *See, e.g.*, *Capital One Bank (USA)*, 792 F.3d at 1368 (explaining that sending a notification through a communication medium is a generic computer task); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) ("[T]he broad concept of communicating information wirelessly, without more, is an abstract idea."); *Capital One Bank (USA)*, 792 F.3d at 1367(finding claims directed to "communicat[ing] a notification to [a] user via a device" when a pre-set spending limit was reached to be ineligibly directed to an abstract idea); *Affinity Labs*, 838 F.3d at 1258 (finding patent claims directed to "the function of wirelessly communicating regional broadcast content to an out-of-region recipient" to be ineligible); *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F.Supp.3d 271, 287 (S.D.N.Y.2014) (describing "retrieving information from a stored database" as "one of the most basic functions of the generic computer").

The functional nature of Claim 1's limitations further supports its abstractness. In determining whether a particular claim is directed to an abstract idea, courts have focused on whether the claim is purely functional in nature rather than containing the specificity necessary

to recite how the claimed function is achieved. For example, in *SAP America*, the court asked whether the claim had "the specificity required to transform [it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d at 1167. To answer that question, the Federal Circuit has directed courts to "look to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337. Therefore, the question in such cases is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp,*, 855 F.3d at 1326.

Claim 1 is directed to an abstract end-result. It lacks any of the specificity that the Federal Circuit has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.,* 880 F.3d 1356, 1361–63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a ***specific*** improvement in the capabilities of computing devices") (emphasis added); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a ***specific*** means or method for improving technology") (emphasis added). Claim 1 does not require a new or unconventional machine or process for providing information based on a consumer's interest and location —it requires only generic a mobile phone, a generic server, and a generic database. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp.*, 830 F.3d at 1355. But Claim 1 does not describe how the desired result— providing information based on a consumer's interests and location—is achieved. The mechanism to implement the idea is impermissibly unbounded in scope.

11

Claim 1 thus differs from the claims that the Federal Circuit has held to be eligible because they claimed specific means for improving specific computer technology or solving specific computer problems. For example, the Federal Circuit addressed the eligibility of claims directed to improving computer security in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). In that case, the Federal Circuit held the claims eligible and stated, "Improving security—here, against a computer's unauthorized use of a program—can be a ***non-abstract*** computer-functionality improvement . . . done by a ***specific technique*** that departs from earlier approaches to solve a ***specific computer problem***." *Id.* at 1348 (emphasis added). The court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '285 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

That Claim 1 is limited to a mobile device does not alter this analysis. "Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." *Elec. Power Grp.*, 830 F.3d at 1354. As the Supreme Court explained in *Alice, Parker v. Flook,* 437 U.S. 584 (1978), stands for the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice,* 134 S. Ct. at 2358; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations

omitted). Claim 1 is directed to an abstract idea even if its limitations require practicing that idea on a mobile device.

The other independent claims of asserted patents fare no better under this analysis: they are directed to the same abstract idea. Claim 14 of the '285 Patent is a system analogue to the method of Claim 1, and Claim 1 of the '435 Patent, Claim 1 of the '160 Patent, and claims 1 and 5 of the '107 Patent are system and apparatus claims that require a processor, memory, and program code to practice the same idea—providing information based on a consumer's interests and location. The Supreme Court has made clear that reciting a handful of generic computer components configured to implement the same idea does not convert an ineligible abstract idea into eligible subject matter. *Alice*, 134 S. Ct. at 2359. The claimed advance of the independent claims is supposedly the use of the voice and data capabilities of mobile devices to practice the abstract idea of delivering tailored information to a user, but the claims neither require the use of these capabilities nor improve upon them—they simply use them to reach the abstract concept. This concept is an abstract idea, not an invention, and accordingly, the independent claims fail the first step of the *Alice* analysis.

   b) ***Alice* Step Two: The independent claims do not contain an inventive concept sufficient to confer patent eligibility.**

The claims of the asserted patents fail *Alice*'s second step because they are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using generic, well-known components (i.e., a mobile device, server, and database) to perform their well-understood and conventional functions of receiving, storing, searching, and sending data. Similar to the invalidated claims in *Intellectual Ventures I*, nothing in Claim 1 "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Intellectual*

*Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016).

      Courts have repeatedly held that the presence of generic hardware and software like the kind recited in Claim 1 of the '285 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context."); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1276–77 (Fed. Cir. 2012).

      Each of the limitations recited in Claim 1 of the '285 Patent is described only at a high level of generality as "receiving . . . consumer interest data," "obtaining data identifying a current location," "initiating a search," "receiving results," and "delivering . . . information." To accomplish these high-level functions, the patent recites the need for only off-the-shelf, conventional computer technologies. For example, user device can be "mobile phones or other user devices capable of both voice and data communications." '285 Pat., 6:7-9. "[T]he user may provide non-verbal input, such as depressing a 'yes/no' button or a designated sequence of keys, instead of providing spoken input." *Id.*, 9:12-15. The database can be "user profiles database [] and inventory database [] . . . and/or different databases may be employed consistent with the objects of the present invention." *Id.*, 7:34-38. "[V]arious locating mechanisms, including the use of global positioning satellite coordinates, user supplied coordinates, and location information available from cellular and PCS telephone systems, can be used" to obtain the location of the

mobile device. *Id.*, 8:12-16. And "notifications can be delivered to user devices [] through speech services [] or directly from notification server [] using various non-voice protocols." *Id.*, 5:61-65. "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. Thus, there is no limitation in Claim 1 of the '285 Patent that could be considered an inventive concept under step two of the *Alice* test.

### 2. The dependent claims are not patent eligible.

The dependent claims of the asserted patents add additional limitations regarding the abstract idea, but they do not include the specificity necessary to claim patent-eligible subject matter. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. Accordingly, the dependent claims suffer from the same flaws as the independent claims, despite their additional limitations, and should therefore be treated the same as the independent claims.

The dependent claims recite insignificant pre- or post-solution activity:

| Pre- or Post-Solution Activity | Claims |
|---|---|
| specifying identifying categories and content of information delivered | '285 Patent (Cls. 2, 3, 9, 12, 13); '435 Patent (Cl. 6); '160 Patent (Cls. 7, 9); '107 Patent (Cl. 6) |
| identifying form of input | '285 Patent (Cls. 4, 8); '435 Patent (Cl. 3); '160 Patent (Cl. 3, 6); '107 Patent (Cl. 3) |
| identifying type of search and data retrieved | '285 Patent (Cls. 5, 6) |
| identifying an indication or request for a notification | '285 Patent (Cls. 10, 11) |
| receiving consumer interest data from a mobile device | '285 Patent (Cl. 7) |
| receiving messages indicating user interest | '160 Patent (Cl. 10) |

15

| Pre- or Post-Solution Activity | Claims |
|---|---|
| identifying rules for accomplishing a result | '435 Patent (Cl. 3); '160 Patent (Cl. 2); '107 Patent (Cl. 3) |
| correlating data | '435 Patent (Cls. 4, 5, 8, 9, 10); '160 Patent (Cls. 4, 5, 8) |
| identifying form of notification | '435 Patent (Cl. 7) |
| storing data in a database | '107 Patent (Cl. 7) |

Each of these dependent claims, like Claim 1 of the '285 Patent, is not meaningfully limited because these activities are not "essential to the invention." *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 763 (E.D. Tex. 2014) (noting limitations must "do more than recite pre- or post-solution activity, they [must be] central to the solution itself" to be meaningful) (quotations omitted). Because all of these claims are directed to the abstract idea of providing information based on a consumer's interests and location, and none includes any inventive concept, the claims similarly fail both steps of the *Alice* test.

The dependent claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not inject any unconventional computer components or techniques. The claims simply apply the abstract concept of providing information based on a consumer's interest and location, and the Federal Circuit has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech*, 899 F.3d at 1290 ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."). Accordingly, the dependent claims, like the independent claims, fail both steps of the *Alice* test and should be found ineligible.

16

**C.      There are no claim construction or factual disputes preventing the Court from ruling on this issue at the Rule 12 stage.**

The issue of the patent eligibility of the asserted patents is ripe for the Court's consideration. There are no claim construction issues affecting the *Alice* analysis, as Aeritas has not proposed any constructions of the asserted patent's terms that would alter the ineligibility of the claims. Additionally, there are no factual disputes on this record. Neither the Complaint nor the asserted patents do not assert any unconventional mechanism of implementing the claimed idea of providing information based on a consumer's interest and location.

This case is thus unlike *Berkheimer*, where the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id*. Here, in contrast, neither the claims nor the specification describes any unconventional components or the use of generic components in some unconventional manner.

This case is also unlike *Cellspin* where Federal Circuit found that "plausible and specific factual allegations that aspects of the claims are inventive are sufficient" to defeat a motion to dismiss. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). While pleadings may properly be considered for a Rule 12 motion to dismiss (subject to the *Twombly/Iqbal* pleading standards), the pleadings cannot be used to alter or rewrite the terms of a patent or to

17

confer eligibility on otherwise ineligible subject matter. *Cf. Aatrix,* 882 F.3d at 1125; *see also Cellspin,* 927 F.3d at 1317 ("While we do not read Aatrix to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient."). Here, Aeritas has not alleged any facts to suggest the claims' components were anything other than well-known, routine, and conventional.

Accordingly, this issue is ripe for the Court's consideration, and the asserted patents should be found invalid for failing to claim patent-eligible subject matter.

## III.    CONCLUSION

For the foregoing reasons, Subway respectfully requests that the Court dismiss this case for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Subway respectfully requests dismissal with prejudice.

Dated:  March 10, 2020

Respectfully submitted,

By:  */s/ Neil J. McNabnay*
      Neil J. McNabnay
      Texas Bar No. 24002583
      mcnabnay@fr.com
      Ricardo J. Bonilla
      Texas Bar No. 24082704
      bonilla@fr.com
      Rodeen Talebi
      Texas Bar No. 24103958
      talebi@fr.com

      FISH & RICHARDSON P.C.
      1717 Main Street, Suite 5000
      Dallas, TX  75201
      (214) 747-5070 – Telephone
      (214) 747-2091 – Facsimile

      COUNSEL FOR DEFENDANTS
      SUBWAY SANDWICH SHOPS LLC,
      SUBWAY SUBS, LLC, FRANCHISE
      WORLD HEADQUARTERS, LLC, AND DOCTOR'S
      ASSOCIATES, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 10, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

      */s/ Rodeen Talebi*
      Rodeen Talebi